**CENTRAL PETROLEUM COMPANY et al.,**
Appellants,

v.

**Stella WRIGHT, Appellee.**

Court of Appeals of Kentucky.

March 23, 1956.

As Modified on Denial of Rehearing
May 25, 1956.

Allen Prewitt, Frankfort, for appellants.

Leslie W. Morris, Marion Rider, Frankfort, for appellee.

CULLEN, Commissioner.

Mrs. Stella Wright recovered judgment against the Central Petroleum Company and its employe, Harold King, in the amount of $20,725.11, for personal injuries and property damage sustained in a collision between Mrs. Wright's automobile and a truck owned by the Petroleum Company and being driven by King. The company and King have appealed, presenting as their main contention that their motions for a directed verdict, and for judgment notwithstanding the verdict, should have been sustained because the evidence shows that Mrs. Wright was chargeable with contributory negligence as a matter of law.

Mrs. Wright's automobile was being driven by her daughter, Mrs. Howser. It is conceded that Mrs. Howser was acting as the agent of her mother to such an extent that any negligence of the daughter would be imputed to the mother. Accordingly, if Mrs. Howser was guilty of contributory negligence, Mrs. Wright cannot recover.

The collision occurred at the intersection of U. S. Highways 60 and 421, a short distance southeast of Frankfort. At this point, Highway 60 runs generally north and south, and Highway 421 intersects from the east at about a 45 degree angle. Traffic going north on Highway 60 is required to turn off at the intersection onto a feeder road which leaves Highway 60 at an angle and intersects Highway 421 about 300 feet east of Highway 60, so that there is a triangular island bounded on the west by Highway 60, on the northeast by Highway 421, and on the southeast by the feeder road. At the time of the accident the intersection was under construction,

and both Highway 421 and the feeder road were surfaced with gravel. There was a stop sign on the feeder road at the point where it intersected with Highway 421.

The automobile driven by Mrs. Howser, coming from the south on Highway 60, entered the feeder road and came to a stop at the entrance to Highway 421. Mrs. Howser testified that she looked to the left and saw the gasoline transport truck of the appellants just entering upon Highway 421 from Highway 60, *about 200 or 225 feet away*. She said that the truck "was coming fast, I would say maybe 45 miles an hour." Nevertheless, she put her car in low gear and entered upon Highway 421, turning to her left. She testified that she reached the righthand lane and had traveled "maybe" 75 feet west of the intersection when the truck came across the road into her car.

According to the truck driver, he was only 75 feet from the intersection when Mrs. Howser pulled out in front of him. He applied his brakes and the truck skidded on the loose gravel, striking the Howser car just as it crossed over onto the north side of Highway 421. There was evidence that the truck had skidded for 60 feet and was partly in the north lane of Highway 421 at the moment of the collision. Although Mrs. Wright and another passenger in her car corroborated Mrs. Howser's estimate that the accident occurred some 75 feet west of the point where the feeder road entered Highway 421, a state patrolman and the driver of another vehicle both testified that the point of collision was just opposite the mouth of the feeder road.

All witnesses agree that the truck struck the car a glancing blow on the left side, and that both vehicles came to a stop within four or five feet. Obviously, the truck was almost to a stop when the collision occurred, because the glancing blow along the side of the car could not, of itself, have substantially affected the momentum of the truck. This fact, together with the undisputed evidence of skid marks extending 60 feet behind the truck, shows that the truck

driver had applied his brakes some distance before the collision.

If the Howser car had crossed the south lane of the highway and reached the north lane well ahead of the truck, as is contended, there could have been no reason for the truck driver to apply his brakes and skid his truck to a stop.

The statute controlling the operation of vehicles entering upon a through highway from an inferior highway, KRS 189.330, requires that the right of way be yielded to vehicles on the through highway that are "approaching so closely as to constitute an immediate hazard". This statute has been construed and applied by this Court in many cases, and in every case where the facts were similar to those in the case at bar, the plaintiff was held guilty of contributory negligence as a matter of law.

In Mullen v. Coleman, 297 Ky. 351, 179 S.W.2d 600, 602, the plaintiff, as she approached within 15 or 20 feet of a through highway, looked to her left and saw no vehicle within her range of view of 800 feet; she looked again when her front wheels were about two feet onto the pavement of the through highway, and saw the defendant's car approaching 400 feet away at 100 miles per hour. She proceeded on across the road and turned left and, according to her version, had traveled some 25 or 30 feet in the right lane when the defendant's car struck her. We held that she was contributorily negligent as a matter of law. We pointed out that this was not a case where the plaintiff had the right to assume the defendant was traveling at a reasonable rate of speed, because the plaintiff testified that she observed and knew that the defendant was going at an excessive speed: We said:

"* * * knowing the Buick was approaching at a terrific rate of speed, she deliberately shot the gas to her car in an attempt to beat it across the highway. Of course she said she was successful in doing that, and that she had proceeded some 25 or 30 feet from the intersection before her car was sideswiped, but even then she is confronted with her own testimony which

showed that immediately after Sanderson's car crossed the bridge he began to apply his brakes in an effort to avoid striking her, or at least to slacken his speed. * * * it was Mrs. Coleman's conduct covering a period of a very few seconds which was the proximate cause of the accident. * * *"

The similarity of facts is apparent.

In Huber & Huber Motor Express v. Croley, 303 Ky. 101, 196 S.W.2d 965, the plaintiff testified that as he approached a through highway at a speed of from 10 to 15 miles per hour, he looked to his left and saw the defendant's truck some 200 to 300 feet away, traveling about 35 to 40 miles per hour; he brought his car to a "practical stop," shifted into low gear, and proceeded into the intersection, turning to his left; he had reached the right side of the highway and traveled 20 to 25 feet from the intersection when the truck came across the center line and struck his car. We held that the defendant was entitled to a directed verdict. We pointed out that according to the plaintiff's own estimate, the truck would have reached the intersection in *a little over four seconds* from the time he first saw it. In the case at bar, according to Mrs. Howser's statements as to speed and distance, the truck would have reached the intersection in *less than four seconds*.

In Romans v. Duke, 313 Ky. 157, 230 S.W.2d 439, 440, the plaintiff, approaching a through highway, observed a truck coming from his left about 300 feet away going about 40 miles per hour; he " 'didn't bring the car to a complete stop' " but proceeded into the intersection and turned left; and according to his testimony the collision occurred after he had reached the right lane of the highway. We held that the plaintiff was contributorily negligent as a matter of law, saying:

"* * * The approaching heavily loaded truck constituted an *immediate hazard* regardless of whether it proceeded in a straight line or which way it turned. * * *"

In Yates v. Kurtz, 314 Ky. 867, 238 S.W. 2d 669, 670, the plaintiff slowed to about two

or three miles per hour upon approaching a through highway; he looked to the left and saw the defendant's automobile approaching some 500 to 600 feet away; he shifted into low gear and turned left onto the highway, and had reached the right side of the road when struck by the defendant's car. We held that the defendant was entitled to a directed verdict, saying:

" * * * She thought the approaching car was 500 or 600 feet away and thought she had time to enter the highway and make the turn. In this she was mistaken. In fact the car was so close as to create an immediate hazard."

See also Manning v. Claxon's Ex'x, Ky., 283 S.W.2d 704; Vaughn v. Jones, Ky., 257 S.W.2d 583.

We think it is beyond question that an approaching vehicle less than four seconds' traveling time away from an intersection constitutes an "immediate hazard" and should be recognized as such by anyone who has observed its speed and proximity.

The cases relied upon by the appellee all are *city* intersection cases, where the car on the through street was at such a distance away that, if traveling at a lawful speed, it would not have constituted a hazard, and where the plaintiff either did not see the car or made no effort or attempt to gauge its speed. See, Louisville Taxicab & Transfer Co. v. Tungent's Adm'r, 313 Ky. 1, 229 S.W.2d 985; Thomas v. Dahl, 293 Ky. 808, 170 S.W.2d 337; Gartrell v. Harris' Coadm'xs, 300 Ky. 82, 187 S.W.2d 1019; Danville Cab Co. v. Hendren, 304 Ky. 528, 201 S.W.2d 561.

The appellee also relies upon Harris v. Morris, Ky., 259 S.W.2d 469, and Cody v. Nortof, Ky., 267 S.W.2d 403, but in those cases the plaintiffs were passengers in the vehicles on the inferior street, and the contributory negligence of the driver of the vehicle in which they were riding was not imputable to them.

It is our opinion that the plaintiff in the case before us was chargeable with contributory negligence as a matter of law, and the defendants therefore were entitled to a directed verdict.

The judgment is reversed, with directions to enter judgment for the defendants notwithstanding the verdict.

Judge HOGG dissenting.